The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMED ALI,

        Plaintiff,

   v.

MICHAEL MUKASEY, et al.,

        Defendants.

CASE NO. C07-1030RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 9, 10). Neither Plaintiff nor Defendants have requested oral argument, and the court finds the motions suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons stated below, the court GRANTS Plaintiff's motion (Dkt. # 9), DENIES Defendants' motion (Dkt. # 10), and mandates further action by Defendants as described at the conclusion of this order.

## II. BACKGROUND

Plaintiff Mohamed Ali was born in Somalia and has been lawfully residing in the United States since February 2002. He was admitted to the United States as a derivative refugee based on his wife's approved I-730 petition. Heinauer Decl. ¶ 3. On March 4,

ORDER – 1

2004, Ali filed an I-485 application to adjust to permanent resident status, and the application has not yet been adjudicated.

Ali now seeks to compel Defendants to act on his application. Defendant Michael Chertoff is the Secretary of the Department of Homeland Security ("DHS"). Defendant Julia Harrison is Seattle Field Office Director of the United States Citizenship and Immigration Service ("USCIS"), the agency within DHS responsible for adjudicating Ali's application. Defendant Michael Mukasey is the Attorney General of the United States, an agency of which the Federal Bureau of Investigation ("FBI") is a subdivision. Under an arrangement whose details are not clear from the record, the FBI is responsible for conducting a portion of the background investigation relevant to adjudicating Ali's application. Defendant Robert S. Mueller is the Director of the FBI. Defendant Laura Laughlin is the FBI's Special Agent in Charge in Seattle. The court will refer to the Defendants collectively as "the Government," except where clarity demands otherwise.

It is undisputed that the sole justification for the delay in processing Ali's application is that USCIS has not yet received the results of his FBI "name check." Gov't Mot. at 2. A "name check" is a (presumably) computerized search of an applicant's name against FBI investigative databases. Heinauer Decl. ¶ 12. The FBI received USCIS's request for a name check for Ali on March 17, 2004. Newsome Decl. ¶ 41. Ali's name check request was sent to the final stage of the review process on August 25, 2004, and it has been pending ever since. *Id*. As of February 15, 2008, USCIS declared on its website that it was adjudicating I-485 applications based on refugee admission filed before January 7, 2007. Pltfs.' Mot. at 7. Thus, while the INS publicly states that it adjudicates I-485 applications within about a year, Ali's application has been pending for about four years.

### III. ANALYSIS

ORDER – 2

Plaintiff seeks summary judgment compelling USCIS to adjudicate his I-485 application. On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). When confronted with purely legal questions, the court does not defer to the non-moving party.

**A.    The Court Has Jurisdiction to Compel Action on Ali's Application.**

Ali asserts jurisdiction under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-706. Although the APA itself does not confer subject matter jurisdiction, the general grant of jurisdiction to resolve federal questions under 28 U.S.C. § 1331 is, in conjunction with the APA, sufficient to confer jurisdiction over a challenge to federal agency action. *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999); *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004). The Government does not dispute that the court has jurisdiction in this matter. *See* Gov't Mot. at 3 (noting that "[c]ourts in this judicial district have held that there is jurisdiction to consider mandamus actions involving adjustment of status applications.").

**B.    Ali is Entitled to Relief as a Matter of Law.**

ORDER – 3

The court now examines the merits of Ali's claims. Although both 28 U.S.C. § 1361 and the APA provide potential avenues for relief, those avenues are "essentially the same," and the court focuses on Ali's claim under the APA. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (declining to engage in separate analysis of claims under 28 U.S.C. § 1361 and APA).

### 1. The USCIS Defendants Have a Mandatory Duty to Act on Ali's Application.

To earn relief under the APA, Ali must show a nondiscretionary duty to act, and, in a case where the challenge is to a delay in acting, must show that the delay is unreasonable. *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 63 & n.1 (2004); 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed").

USCIS has enacted regulations that establish its mandatory duty to act on Ali's application. Most prominently, one regulation declares that "an applicant *shall* be notified of the decision of the director [on an application for adjustment of status] and, if the application is denied, the reasons for the denial." 8 U.S.C. § 245.2(a)(5)(i) (emphasis added). Although this regulation has no relevance in the court's discussion of the applicability of § 1252(a)(2)(b)(ii), which concerns only *statutory* bases for discretion, *Spencer*, 345 F.3d at 691, it is dispositive of the court's analysis of the application of the APA. *See SUWA*, 542 U.S. at 65 (noting that agency regulations with force of law can serve as basis for mandatory duty underlying APA action).

There is no evidence, however, that Defendants not connected with USCIS have a mandatory duty to act on Ali's application. In particular, Ali points to no source of a duty of the FBI to process name checks. For that reason, the court holds that FBI

ORDER – 4

Director Mueller, Special Agent Laughlin, and Attorney General Mukasey are not proper Defendants in this action.

### 2. USCIS's Delay in Adjudicating Ali's Application is Unreasonable.

Having established USCIS's mandatory duty to act upon Ali's application, it remains to decide *when* it must act. Without a statutory or regulatory timetable, the APA directs agencies to resolve applications reasonably quickly. 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). The court may consider the following six-factor test in determining whether the Government's delay is unreasonable:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Independence Mining Co.*, 105 F.3d at 507 n.7 (citing *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984)).

As to the first of these so-called "*TRAC* factors," the court finds no "rule of reason" guiding the Government's processing of Ali's application. The Government asserts that name checks are processed in "first in, first out" fashion. Gov't Mot. at 4. The "rule" appears to be that once a name check is forwarded to the FBI, USCIS abdicates responsibility for the name check. Where USCIS has been assigned the mandatory duty to adjudicate adjustment applications, this policy cannot be considered a "rule of reason."

ORDER – 5

The second *TRAC* factor requires consideration of any Congressional expression of a "timetable or other indication of the speed with which it expects the agency to proceed." Congress has expressed its "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b).[1] Ali's application has been pending more than eight times as long.

As to the third and fifth *TRAC* factors, the court cannot easily categorize the Government's delay as affecting "human health and welfare" rather than mere economic interests. Because Ali retains the ability to live and work in this country with his family, it is not clear how the delay affects his health or welfare. The delay, however, slows the process of obtaining permanent residence and, ultimately, citizenship. Ali claims travel difficulties also flow directly from the delay in processing his application. Pltfs.' Mot. at 7. Some of these burdens pertain to economic interests, and some pertain to human welfare.

In examining the fourth *TRAC* factor, the court must consider the effect of expediting Ali's application on other USCIS priorities. USCIS offers evidence that expedited and priority name checks can cause delay in processing other name checks. Heinauer Decl. ¶ 22. While the court acknowledges this concern, it cannot deny relief to a person whose application has been unreasonably delayed merely because there are others who have perhaps also been unreasonably delayed.

---

[1] In addition to the aspirational 180-day deadline in 8 U.S.C. § 1571(b), the court notes that 8 C.F.R. § 103.2(b)(18) sets forth a detailed timetable for "withholding adjudication of a visa petition or other application if . . . an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion . . . ." As neither party cites this regulation, the court has not relied on it in resolving these motions. *Cf. Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1166 (N.D. Cal. 2007) (relying on 8 C.F.R. § 103.2(b)(18) as basis of decision mandating action on adjustment of status application).

ORDER – 6

Finally, the court notes that there is no evidence of an improper purpose underlying the Government's delay in this action, thus dispensing with the sixth *TRAC* factor.

In addition to its consideration of the *TRAC* factors, the court considers the Government's justifications for the delay in processing Ali's application. The justifications fall into two categories. First, that national security and public safety concerns mandate the use of name checks. Second, that the sheer number of name checks that the Government must process causes delays.

The court is not persuaded by the Government's attempt to justify its delay in this case by trumpeting its generalized obligation to protect public safety and national security. The court readily acknowledges the importance of public safety and national security, but sees no connection between these concerns and this case. Ali is living in the United States, and has been for more than six years. If Ali presents a threat to national security and public safety, the Government does not ameliorate that threat by delaying a decision on his I-485 application. If the Government granted Ali's application for adjustment of status, it would retain a panoply of options in the event that it discovered that Ali posed a threat to national security. It could arrest him; it could deport him. *See Singh*, 470 F. Supp. 2d 1064, 1070 (noting Government's ability to address security threats that permanent residents pose). If the Government is concerned about public safety and national security, it should find a way to process name checks more rapidly, thereby revealing threats to security more quickly. The Government protects no one by delaying a decision on Ali's application while his name check languishes with the FBI.

As to the Government's second justification, evidence of the large numbers of name checks that USCIS must request raises more questions than it answers. Despite the large number of name checks it must request, USCIS manages to process most I-485

ORDER – 7

applications in about a year. Pltfs.' Mot. at 7. The central question this action poses as to Ali's application is: what is taking so long? USCIS's citation to the large number of name checks it must request does nothing to answer this question.

The most salient feature of the Government's evidence is that there is no evidence whatsoever that explains why Ali's application has languished in the final phase of review for more than three years. Ali's name check proceeded through the first three phases in a matter of months, and the Government claims that the final phase requires locating paper files and requesting pertinent information from FBI field offices. Newsome Decl. ¶ 41. But why has it taken more than three years to locate such files and information? The court has no answer to this question, because the Government has presented no evidence to answer it. The lack of evidence explaining the delay in adjudicating Ali's application is fatal to the Government's position.

Ultimately, the court's decision regarding the reasonableness of the delay in this action requires it to balance the Government's systemic justifications against Ali's individual interests. If the Government's justifications were truly systemic – that is, if they applied to all applicants for adjustment of status – the outcome here might be different. Instead, some applicants receive relatively speedy adjudication, whereas others do not, and the Government does not explain why. When an applicant has been waiting for years for adjudication, knowing that others have received decisions much more quickly, it is not enough to say, to paraphrase the Government's response: "This is the system." The APA provides Ali with a means to challenge the system, and he has done so successfully in this case.

The court finds that there are no disputed issues of material fact, and that Ali is entitled to judgment as a matter of law.

### IV. CONCLUSION

ORDER – 8

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment (Dkt. # 9) and orders USCIS to issue a decision on Ali's application for adjustment of status within 45 days of this order. The court will delay entry of judgment in this action for 45 days, during which time the Government may present evidence specific to Ali which demonstrates a reason for the delay in adjudicating his application. If the Government does not present such evidence, it shall file an affidavit with the court demonstrating that it has adjudicated Ali's application in accordance with this order, and shall also serve the affidavit on the Plaintiff. The court DENIES the Government's cross-motion for summary judgment (Dkt. # 10), except to the extent that it seeks dismissal of Defendants Mueller, Laughlin, and Mukasey.

Dated this 7th day of March, 2008.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9